UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STERLING EQUIPMENT, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | C.A. No._____ |
| v. | ) | |
| | ) | |
| PETER GIBSON | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

Sterling Equipment, Inc., by its attorneys, Pierce Atwood, LLP, as and for its Complaint

against Defendant Peter Gibson (the "Defendant" or "Gibson") hereby alleges as follows:

### PARTIES

1.     Sterling Equipment, Inc. ("SEI") is a Massachusetts Corporation with offices in

Quincy, Massachusetts.

2.     For over fifteen years, Peter Gibson was an employee of SEI and/or its affiliate

Cashman Dredging & Marine Contracting Co., LLC ("CDMC" or the "Company").  CDMC is a

Massachusetts limited liability company with its offices in Quincy, Massachusetts.  Gibson is a

former Massachusetts resident.  Gibson presently resides at 12337 Homeport Drive, Maurepas,

Louisiana.

### JURISDICTION AND VENUE

3.     Jurisdiction is properly placed in this court pursuant to 28 U.S.C. § 1332 because

the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is

diversity of citizenship between SEI and Defendant.

{W6744040.1}

4.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this judicial district and Defendant is subject to personal jurisdiction in this Judicial District.

## FACTS

5.      Defendant began his employment at SEI in 2002 as a port engineer and over the next fifteen (15) years would be employed by either SEI or CDMC in various roles in various states, including in Massachusetts.

6.      In 2007, Defendant moved to Massachusetts with Wendy Gibson to continue working for CDMC.

7.      In January 2011, Wendy Gibson began working for SEI, a company directly affiliated with CDMC, in Quincy, Massachusetts.

8.      Ms. Gibson began her career at SEI as an accounts payable clerk and receptionist, and was thereafter promoted to the position of controller.  As controller, Ms. Gibson was responsible for all accounting functions at SEI.

9.      In May 2012, Defendant married Wendy Gibson in Massachusetts.

10.      In February 2013, Peter Gibson and Wendy Gibson moved to Florida but Wendy Gibson continued as controller of SEI and Peter Gibson continued as an employee of CDMC.

11.      In June 2014, Defendant and Wendy Gibson divorced.  However, after purportedly living apart for only a short time, in October of 2014, Defendant and Wendy Gibson moved back in together in shared residence in Florida.

12.      In November 2014, Defendant and Wendy Gibson moved back to Massachusetts where both resided until April 2015.  Thereafter, Defendant and Wendy Gibson moved to Louisiana together.

13.    At all times, even during the period in which they were divorced, Defendant and

Ms. Gibson remained close and stayed in constant contact each day by telephone. For instance,

on August 22, 2014 (the day of the Fraudulent Wire Transfer), Ms. Gibson called Defendant

seventeen (17) times.

14.    In July 2015, Defendant and Wendy Gibson re-married.

15.    Throughout their two marriages and even during their brief divorce, Wendy

Gibson managed and controlled both Peter Gibson and Wendy Gibson's joint finances through

various joint banking accounts. Indeed, Peter Gibson testified that even during their brief

divorce, he would need to ask Wendy Gibson for the passwords and login information for the

couple's shared bank accounts.

### *Wendy Gibson Converts $198,000 From SEI*

16.    On August 22, 2014, Wendy Gibson sent a wire transfer for one hundred and

ninety-eight thousand dollars ($198,000) from SEI's Santander bank account in Massachusetts

purportedly to a Unique Holdings Corp. in payment of a purported Invoice No. 209 (the

"Fraudulent Wire Transfer"). However, there was no Invoice No. 209 nor were funds received

by a "Unique Holdings Corp". The Fraudulent Wire Transfer constituted a fraud committed by

Ms. Gibson to misappropriate SEI's funds. SEI proved these facts to a jury at trial held before

U.S. District Judge Stearns in the U.S. District Court for the District of Massachusetts. *See*

**Exhibit. A**, Docket Sheet, *Sterling Equipment, Inc. v. Gibson*, 1:16-cv-11594-RGS; *See* **Exhibit**

**B** (Complaint Against Wendy Gibson); **Exhibit C** (Judgment on Jury Verdict Form).

17.    At this trial, a jury found Ms. Gibson liable for conversion of property belonging

to SEI and awarded SEI the full amount of the Fraudulent Wire Transfer (($198,000) and an

additional fifty thousand dollars ($50,000) for breaching her fiduciary duties to SEI.  *See* **Exhibit C** (Judgment).

18.     On January 11, 2018, Judge Stearns entered Judgment for a total amount of $290,234.74, inclusive of pre-judgment interest.  *See* **Exhibit C** (Judgment).

### *The Ill-Gotten Gains Converted From SEI's Bank Account in Massachusetts Were Deposited Into Defendant's Bank Accounts in Massachusetts*

19.     Since August 22, 2014—the date Wendy Gibson converted SEI's funds through effectuating the Fraudulent Wire Transfer—substantial unexplained funds have been deposited into several bank accounts held jointly by Defendant and Ms. Gibson.

20.     During the litigation brought by SEI against Ms. Gibson on August 4, 2016, SEI retained a forensic accountant to review the relevant bank records of Defendant and Ms. Gibson that SEI was able to secure during discovery.

21.     Based on a review of these records, and after taking into account normal depository activity such as regular income, bonus compensation, investments, and sale of real estate, SEI's forensic accountant identified substantial deposits with an indeterminate originating source that went into several bank accounts held jointly by Defendant and Ms. Gibson.  *See* Affidavit of Kim Train, dated August 31, 2017, which is appended hereto as **Exhibit D**.

22.     These unexplained-for-deposits identified by SEI's forensic accountant were deposited in bank accounts jointly held by Ms. Gibson and Defendant, including a J.P.  Morgan bank account ending in 0595 and a Bank of America account ending in 5601.

23.     In addition, on June 2, 2017, in connection with the above-referenced litigation, counsel for SEI took the deposition of Wendy Gibson.  During this deposition, counsel for SEI identified substantial additional funds deposited into bank accounts held jointly by Defendant and Ms. Gibson for which Ms. Gibson could not identify the originating source.

24.     The unexplained funds described above, deposited into Defendant's joint account with Ms. Gibson represent, at least, a substantial portion of the ill-gotten gains that Ms. Gibson derived from the Fraudulent Wire Transfer of $198,000.

25.     In February 2018, in connection with a Union Grievance Arbitration, Peter Gibson provided certain alleged documents which purported to explain the source of some portion of the unexplained funds into the Gibsons' joint accounts, but also for the first time produced bank records which revealed approximately $30,000 in cash ATM deposits into their joint bank accounts which were made in the months immediately after the close of discovery in the Wendy Gibson litigation.

26.     On or about May 17, 2018, Wendy Gibson filed for bankruptcy.  However, to date, Peter Gibson has not filed for bankruptcy.

### Defendant Benefited From the Ill-Gotten Gains
### Converted From SEI's Bank Account in Massachusetts

27.     Upon information and belief, after the Fraudulent Wire Transfer, Peter Gibson intentionally concealed from and intentionally failed to disclose to SEI and CDMC that he had benefited from the Fraudulent Wire Transfer.

28.     In June of 2017, after conducting an investigation and after conducting discovery in the Wendy Gibson litigation, CDMC and SEI determined that Peter Gibson had benefited from the Fraudulent Wire Transfer effectuated by his wife, Wendy Gibson.  Based on this finding, and the intimidating and harassing behavior that Defendant exhibited toward CDMC and SEI employees relating to the then-pending litigation between SEI and Wendy Gibson, CDMC terminated Defendant's employment.

29.     The Union representing Defendant, IUOE Local 25, contested Defendant's termination under the collective bargaining agreement governing Defendant's employment.  The dispute proceeded to binding arbitration.

30.     On February 16, 2018, an arbitration was held before Arbitrator Mattye M. Gandel (the "Arbitrator").  During this proceeding, the parties had the opportunity to present evidence and argument and cross-examine witnesses.

31.     On May 23, 2018, the Arbitrator issued a written decision finding that CDMC had just cause to terminate Defendant.  This decision was based on the Arbitrator's determination "that [Peter Gibson] benefited from [the Fraudulent Wire Transfer]."  Arbitration Op. at 22-23. A copy of the Arbitrator's Opinion and Award are attached hereto as **Exhibit E.**

32.     The Arbitrator's determination "that [Peter Gibson] benefited from [the Fraudulent Wire Transfer]," which should be given preclusive effect in the instant action, was based on several factors.

33.     First, the Arbitrator found that there was no dispute that (1) there existed certain unexplained deposits [in Peter Gibson's bank accounts], (2) Peter Gibson considered his wife's property as his own, and (3) Peter Gibson and his wife "managed accounts jointly."  Arbitration Op. at 21.

34.     Second, after Ms. Gibson effectuated the Fraudulent Wire Transfer and during the time that Gibson's bank accounts experienced unusual depository activity, Peter Gibson (1) purchased a Harley Davidson motorcycle, an RV, and another vehicle for his wife, Wendy Gibson; and (2) traded in a Cadillac for another Cadillac.  Arbitration Op. at 20-21.

35.     Third, the Arbitrator found that "[Gibson] and his wife spoke multiple times every day; that during a period of time they were married; that during other times they were divorced and that they spoke daily even when they were divorced." Arbitration Op. at 21.

36.     The Arbitrator also found that "it is just not credible, given their relationship and their joint back [sic] accounts, that during those multiple calls when his wife was so upset that she did not tell [Gibson] before, on the day of, or on the days/months/years after about the fraudulent wire transfer." Arbitration Op. at 22.

37.     SEI repeats and incorporates herein by reference the facts found by the Arbitrator as described above.

38.     In sum, after Ms. Gibson effected the Fraudulent Wire Transfer, Defendant began to make large, unusual purchases from these joint accounts using the ill-gotten gains derived from the Fraudulent Wire Transfer.

39.     Following Ms. Gibson's effectuation of the Fraudulent Wire Transfer, from November 2014 to April 2015, Defendant lived in Massachusetts and worked for CDMC in Massachusetts.  During this time, various unexplained deposits were deposited into Defendant's bank accounts.

40.     While Defendant moved from Massachusetts in April 2015, he continued to work for CDMC in Massachusetts, traveled regularly to Massachusetts, and had constant e-mail and telephone communications with CDMC and SEI employees in Massachusetts, until his termination from CDMC in June 2017.

## COUNT I
### (Money Had and Received)

41.    SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 40 above.

42.    SEI has had, at all relevant times, an ownership and/or possessory interest in the $198,000 (the "Funds") transferred from SEI's bank account via the Fraudulent Wire Transfer.

43.    The Funds were transferred from SEI's bank account via the Fraudulent Wire Transfer with no adequate legal basis.

44.    Defendant received into his various bank accounts, held jointly with his wife, the Funds transferred from SEI's bank account via the Fraudulent Wire Transfer.  Defendant received substantial, direct economic benefits from receipt of the Funds.

45.    Defendant has been unjustly enriched at SEI's expense by his receipt of the Funds, which should be returned to SEI.

46.    As a direct and proximate result of Defendant's receipt of the Funds, SEI has suffered, and continues to suffer, harm and seeks restitution from Defendant for the value of the benefit received by Defendant in an amount to be determined at trial.

## COUNT II
### (Unjust Enrichment)

47.    SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 46 above.

48.    Defendant received into his various bank accounts, held jointly with his wife, the Funds transferred from SEI's bank account via the Fraudulent Wire Transfer.  Defendant received substantial, direct economic benefits from use of the Funds to purchase or secure goods, services, and other items of value.

49.    Defendant has been unjustly enriched at SEI's expense by his use of the Funds to purchase or secure goods, services, and other items of value.

50.    As a direct and proximate result of Defendant's use of the Funds to purchase or secure goods, services, or other items of value, SEI has suffered, and continues to suffer, harm and seeks restitution from Defendant for the value of the benefit received by Defendant in an amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, SEI respectfully requests that the court grant the following relief:

1.    That the court enter judgement against Peter Gibson on all counts of the complaint;

2.    That the court enter judgment against Peter Gibson in the amount of $198,000;

3.    That the court award SEI restitution in the form of a money judgment for the value of the benefit received by Peter Gibson in an amount to be determined at trial;

4.    That the court award SEI its attorneys' fees and costs against Peter Gibson;

5.    That the court award SEI pre and post judgment interest; and

6.    That the court grant such further and additional relief against Peter Gibson as the court deems just and proper.

**JURY DEMAND**

SEI demands a trial by jury on all issues so triable.

Respectfully submitted,

**STERLING EQUIPMENT, INC.**

By its counsel,

*/s/ Jeffrey E. Francis*
Jeffrey E. Francis (BBO #639944)
*jfrancis@pierceatwood.com*
Michael Derderian (BBO #682757)
mderderian@pierceatwood.com
Pierce Atwood LLP
100 Summer Street, Suite #2250
Boston, Massachusetts  02110

DATED:  June 12, 2018