UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11230-RGS

STERLING EQUIPMENT, INC.

v.

PETER GIBSON

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

July 3, 2019

STEARNS, D.J.

Sterling Equipment, Inc. (SEI) brought this lawsuit against its former employee, Peter Gibson, for receiving $198,000 of misappropriated funds from his wife, Wendy Gibson.[1] More specifically, the Amended Complaint sets out four claims: money had and received (Count I), unjust enrichment (Count II), and violations of the Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A, § 5 (Count III) and § 6 (Count IV). SEI moves for

---

[1] SEI is a Massachusetts corporation with a principal place of business in Quincy, Massachusetts. Peter Gibson is a resident of Louisiana. Am. Compl. (Dkt # 6) ¶¶ 1-2. The court will refer to him either as Gibson or Peter.

summary judgment on the first two counts on *res judicata* grounds.[2] For the reasons to be explained, SEI's motion for summary judgment will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to Gibson as the nonmoving party, are as follows. In 2002, Gibson began working as a port engineer for Jay Cashman, Inc. (JCI). Gibson continued working for JCI, along with its affiliated entities, Cashman Dredging and Marine Contracting Co., LLC (CDMC) and SEI, until 2017.[3]

In 2007, Peter moved with Wendy to Massachusetts, and continued working for CDMC as a dredge man. Wendy started working for SEI as an accounts payable clerk and receptionist, but was later promoted to controller and became responsible for SEI's accounting. In May of 2011, Peter and Wendy got married. In February of 2013, they moved to Florida, but maintained their employment with CDMC and SEI. Although they got divorced in June of 2014, they remained close and moved back in together in October of 2014. In November of 2014, they returned to Massachusetts.

---

[2] In its motion, SEI refers to the first two counts as the only ones alleged, which is true in the original Complaint but not in the operative Amended Complaint. The court, therefore, does not address the latter two counts.

[3] JCI, CDMC, and SEI are wholly owned subsidiaries of JCI Holdings, Inc.

On August 22, 2014, Wendy sent a $198,000 fraudulent wire transfer from SEI.[4] Unexplained deposits were then made to several bank accounts that Peter and Wendy jointly held. On January 3, 2018, a jury in the federal district court of Massachusetts found Wendy guilty of conversion and of breaching her fiduciary duties, and awarded SEI $198,000 and $50,000, respectively. On January 11, 2018, this court entered a $290,234.74 judgment for SEI, inclusive of pre-judgment interest.

On June 30, 2017, CDMC terminated Peter for threatening communications with coworkers about his wife's litigation and for being "complicit in, benefit[ing] from, and fail[ing] to report the fraudulent wire transfer." Stmt of Material Facts (SOMF) (Dkt # 35), Ex. 8. In response, Peter filed a grievance with the International Union of Operating Engineers Local 25. On February 16, 2018, the Union and CDMC participated in an arbitration hearing in Newark, New Jersey conducted by Arbitrator Mattye M. Gandel of the American Arbitration Association. On May 23, 2018, the Arbitrator decided that the matter was arbitrable and that there was just cause for Peter's termination.[5] The Arbitrator ultimately concluded "beyond

---

[4] The wire transfer was sent to Unique Holdings Corp. to pay for Invoice Number 209, but neither the invoice nor the company existed.

[5] Under the Master Collective Bargaining Agreement, an arbitrator's decision is "final and binding." SOMF, Ex. 9 § 33, ¶ 7.

a reasonable doubt that [Peter] knew about the fraudulent transfer, maybe not that day, but certainly in the following days and months and benefited from [it]." *Id.*, Ex. 4 at 23.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it has potential of changing a case's outcome." *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018). "An issue is 'genuine' when a rational factfinder could resolve it [in] either direction." *Boudreau v. Lussier*, 901 F.3d 65, 71 (1st Cir. 2018) (citation omitted).

"'Collateral estoppel, sometimes called issue preclusion, bars parties from re-litigating issues of either fact or law that were adjudicated in an earlier proceeding' before a court or other tribunal of competent jurisdiction." *Patton v. Johnson*, 915 F.3d 827, 833 (1st Cir. 2019), quoting *Robb Evans & Assocs., LLC v. United States*, 850 F.3d 24, 31 (1st Cir. 2017). Since "res judicata . . . is a matter of substantive law," *Schell v. Ford Motor Co.*, 270 F.2d 384, 388 (1st Cir. 1959), and "a federal court sitting in diversity jurisdiction must borrow the substantive law of the forum state," *Cochran v.*

*Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003), Massachusetts law governs the application of collateral estoppel on the arbitration award at issue here. *See Ideker v. PPG Indus., Inc.*, 788 F.3d 849, 852 (8th Cir. 2015) ("In a diversity case like this, we apply state substantive law in deciding whether to apply collateral estoppel or issue preclusion . . . ."); *Tozzolina v. Cty. of Orange*, 2 F.3d 1158 (9th Cir. 1993) (Table) ("The doctrine of collateral estoppel (issue preclusion) in federal courts is controlled by state substantive law.").[6]

Under Massachusetts law, "it is appropriate to give issue-preclusive effect to arbitration awards where the 'arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings.'" *Pierce v. Morrison Mahoney LLP*, 452 Mass. 718, 731 (2008) (citations omitted). "Issue preclusion applies when '(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was

---

[6] Gibson, however, appears to argue that federal law applies. *See Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 37 (1st Cir. 1998) ("The elements of federal res judicata are '(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits.'"), quoting *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir. 1994). Notwithstanding, for the same reasons articulated below, the court finds that SEI would similarly satisfy this standard.

determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.'" *Alicea v. Commonwealth*, 466 Mass. 228, 236 (2013) (citations omitted). "The central inquiry . . . [is] whether the issue on which preclusion is sought has been 'the product of full litigation and careful decision.'" *Miles v. Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992) (citation omitted).

SEI argues, and the court agrees, that the arbitration award is entitled to preclusive effect. First, the parties in this litigation are in privity with, albeit not identical to, those involved in the arbitration. *See Miles v. Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992) ("[C]ollateral estoppel, also known as issue preclusion, does not require mutuality of parties . . . ."). SEI is in privity with CDMC because they are wholly owned subsidiaries of JCI Holdings,[7] *see In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) (finding privity between "sister corporations under the control of a common parent"), and Gibson is in privity with the Union that represented him in the arbitration, *see DaLuz v. Dep't of Corr.*, 434 Mass. 40, 45 (2001) (finding privity between union members and their union). Gibson responds by asserting that he "was only a witness, and not a party to the arbitration."

---

[7] SEI also notes that the counsel who represented CDMC in the arbitration also represented SEI in its prior litigation against Wendy.

Opp'n Mem. (Dkt # 39-1) at 6. While that may be true, the Union adequately represented his interests as a nonparty by arguing, in his defense, that his termination was unjust. *See TLT Const. Corp. v. A. Anthony Tappe & Assocs., Inc.*, 48 Mass. App. Ct. 1, 5 (1999) ("A nonparty to a prior adjudication can be bound by it only where [the nonparty's] interest was represented by a party to the prior litigation.") (citations omitted).

Second, the issues here – (1) whether Gibson received money (2) that belonged to SEI – are the same as those raised in the arbitration. Those issues, in turn, are dispositive of SEI's claims of money had and received and unjust enrichment. "[A]n action for money had and received will lie where the defendant has received money or its equivalent which in equity and good conscience belongs to the plaintiff." *Gen. Exch. Ins. Corp. v. Driscoll*, 315 Mass. 360, 365 (1944). Similarly, "[a] plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a quality that turns on the reasonable expectations of the parties.'" *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (citations omitted).

The Arbitrator found that SEI's reasons for Gibson's termination were valid. In particular, the Arbitrator found that Gibson called two members of management to inquire about the federal lawsuit against his wife, and texted

one of them "game on," which was interpreted as a threat. SOMF, Ex. 4 at 18-19. The Arbitrator concluded that Gibson's version of the communications "was not credible." *Id.* at 19. The Arbitrator also found, as particularly pertinent here, that "[i]t was undisputed that [Wendy] committed a fraudulent wire transfer from" SEI;[8] that "there were unexplained deposits" to several bank accounts that Peter and Wendy jointly held; that Peter and Wendy spoke at least daily; that Peter "acknowledged that 'what's hers is mine and what's mine is hers;'" and that "it [was] just not credible, given their relationship and their joint bank accounts, that" Wendy never told Peter about the fraudulent wire transfer. SOMF, Ex. 4 at 20-22. The Arbitrator concluded "beyond a reasonable doubt that [Peter] knew about the fraudulent transfer . . . and benefited from [it]." *Id.* at 23.[9] In other

---

[8] A jury in this court also found Wendy guilty of conversion, and she did not appeal. Gibson, nonetheless, maintains that the verdict was the result of her attorney's failures to, among other things, produce during discovery and introduce at trial purportedly exculpatory evidence to explain the bank account deposits. But since the issue here is the preclusive effect of the arbitration, the court need not address this point.

[9] Gibson, however, argues that the decision had conflicting findings. While Gibson is correct that the Arbitrator found that "there was no proof that [Gibson] was involved in the actual fraudulent wire transfer," the decision went on to say that "the record established that he benefitted from it and certainly did not tell [CDMC] about [it]." SOMF, Ex. 4 at 22-23.

words, the Arbitrator established that Gibson was unjustly enriched by the money he improperly received from SEI.

Third, the issues were actually litigated in the arbitration. "The appropriate question is whether the issue was subject to an adversary presentation and consequent judgment that was not a product of the parties' consent." *Jarosz v. Palmer*, 436 Mass. 526, 531 (2002) (citations omitted). Here, the arbitration was conducted according to the American Association of Arbitration rules. *See TLT Const. Corp.*, 48 Mass. App. Ct. at 9. The parties were afforded, as the decision notes, a "full and fair opportunity to present evidence and argument, to engage in the examination and cross-examination [of] affirmed witnesses," including Gibson and other SEI and JCI employees, "and otherwise to support their respective positions." SOMF, Ex. 4 at 1. The parties also submitted closing briefs, which included disputes about the admissibility of certain evidence. Since Gibson, therefore, had a fair opportunity to litigate his claims, the final arbitration award is valid and binding.[10] *See TLT Const. Corp.*, 48 Mass. App. Ct. at 9 ("When

---

[10] Gibson disagrees that he had "a full and fair opportunity to defend himself at the arbitration" because he only met his lawyer the day before the arbitration and he purportedly did not know that his wife's fraudulent transfer was going to be discussed. Opp'n Mem. at 7. However, regardless of when he met his lawyer, he was on notice of the arbitration's focus since, at the very least, receiving his termination letter, which specifically provided that he was "terminated for cause because of [his] threatening

arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has.") (citations omitted).

Fourth, the issues here were essential to the Arbitrator's ruling. While the Arbitrator determined that Gibson's telling of events regarding his threats lacked credibility, the material conclusion was that Gibson knew and benefited from his wife's fraudulent wire transfer using SEI funds.

Finally, it is fair to allow for the application of offensive issue preclusion. To determine fairness,

> courts generally ask whether (1) the party in whose favor the estoppel would operate could have joined the original action, (2) the party against whom it would operate had an adequate incentive to defend the original action vigorously, (3) the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant, and (4) the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

*Bellermann v. Fitchburg Gas & Elec. Light Co.*, 470 Mass. 43, 62 (2014) (citations omitted). Here, all four factors weigh in SEI's favor. SEI could not have been added as a party to the arbitration because, even though its funds

---

communications with [CDMC] employees regarding the litigation *and the fact that [he was] complicit in, benefitted from, and failed to report the fraudulent wire transfer.*" SOMF, Ex. 8 (emphasis added).

were stolen, CDMC was the signatory with the Union. Gibson had an incentive to defend himself against what he considered to be an unjust termination, especially given that his salary of roughly $115,700 per year was markedly higher than the national average, and that had he been successful, he would have been entitled to over $100,000 in back pay. *See* SOMF ¶¶ 6-7; Pl.'s Mem. (Dkt # 36) at 18. The arbitration award is not inconsistent with any prior judgment. And this action would not afford Gibson any additional procedural opportunities that were not available to him at the arbitration.[11]

In short, because the arbitration award is entitled to preclusive effect, and the Arbitrator specifically found that Gibson benefitted from his wife's fraudulent wire transfer, SEI is entitled to summary judgment on its claims of money had and received (Count I) and unjust enrichment (Count II). *See Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012)

---

[11] Gibson avers that he has exculpatory evidence in the form of "thousands of pages of bank statements" to explain the previously unexplained deposits, which he contends he could have provided to the Arbitrator if he had had more time to prepare. Opp'n Mem. at 7. He, however, fails to cite or provide – beyond his W-2s, affidavit, and deposition transcript – any of this supposedly exculpatory evidence. *See Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) (The court cannot "draw *unreasonable* inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.") (citation omitted and emphasis in original); *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990) ("It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue.") (citation omitted).

("Generally, final arbitral awards are afforded the same preclusive effects as are prior court judgments."); *Miles v. Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992) ("An arbitration decision can have preclusive effect in a subsequent suit between the same parties or their privies."). The court will schedule a hearing to determine the amount of SEI's damages.[12]

### ORDER

For the foregoing reasons, SEI's motion for summary judgment on Counts I and II is <u>ALLOWED</u>. The Clerk will set a hearing for judgment damages.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[12] The court notes that according to the Arbitrator, although CDMC "cited $60,000 worth of unexplained deposits, the Union determined there were only $17,000 [of] explained deposits." SOMF, Ex. 4 at 21. The Arbitrator further opined that "whether it was $60,000 or one third of that amount, it was undisputed that there were unexplained deposits." *Id.*